# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

―――――――――

W. CLARK APOSHIAN,

Plaintiff-Appellant,

v.

WILLIAM P. BARR, et al.,

Defendants-Appellees.

―――――――――

On Appeal from the United States District Court
for the District of Utah

―――――――――

## RESPONSE TO PETITION FOR
## REHEARING EN BANC

―――――――――

ETHAN P. DAVIS
  *Acting Assistant Attorney General*

JOHN W. HUBER
  *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY .................................................................................1

STATEMENT .................................................................................................................3

ARGUMENT ................................................................................................................8

A.    Having Concluded That the Rule is Legislative, the Court Was Not Precluded From Applying *Chevron*. ..........................................................................8

B.    According Deference to an Interpretation of a Statute with Criminal as well as Civil Penalties Does Not Conflict with the Precedents of the Supreme Court and this Court. ................................................................. 12

C.    En Banc Review Would Also Be Unwarranted Because Plaintiff Has Not Demonstrated The Other Prerequisites For Preliminary Injunctive Relief. ...................................................................................................... 15

CONCLUSION ....................................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Akins v. United States,*
  312 F. App'x 197 (11th Cir. 2009) .......................................................................................4

*Aposhian v. Barr,*
  374 F. Supp. 3d 1145 (D. Utah 2019) ............................................................................ 2, 4

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,*
  515 U.S. 687 (1995) ...............................................................................................5, 13, 14

*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ................................................................................................................2

*Diné Citizens Against Ruining Our Env't v. Jewell,*
  839 F.3d 1276 (10th Cir. 2016) ...........................................................................................15

*Estate of Cowart v. Nicklos Drilling Co.,*
  505 U.S. 469 (1992) ...................................................................................................... 9, 10

*Guedes v. ATF:*
  140 S. Ct. 789 (2020) .................................................................................................... 7, 11
  920 F.3d 1 (D.C. Cir. 2019) ...............................................................................6, 8, 12, 14

*Hays Med. Ctr. v. Azar,*
  956 F.3d 1247 (10th Cir. 2020) ..........................................................................................10

*Hydro Res., Inc. v. EPA,*
  608 F.3d 1131 (10th Cir. 2010) .................................................................................... 9, 10

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991) ........................................................................................................ 9, 11

*Maracich v. Spears,*
  570 U.S. 48 (2013) ...............................................................................................................12

*Muscarello v. United States,*
  524 U.S. 125 (1998) .............................................................................................................12

*NLRB v. Oklahoma Fixture Co.*,
    332 F.3d 1284 (10th Cir. 2003) .................................................................. 13, 14

*Sorenson Comm'ns, Inc. v. FCC*,
    567 F.3d 1215 (10th Cir. 2009) ...................................................................... 10

*United States v. Apel*,
    571 U.S. 359 (2014) ......................................................................................... 14

*United States v. Atandi*,
    376 F.3d 1186 (10th Cir. 2004) ...................................................................... 14

*United States v. Blake*,
    59 F.3d 138 (10th Cir. 1995) .......................................................................... 13

*United States v. Hubenka*,
    438 F.3d 1026 (10th Cir. 2006) ...................................................................... 14

*United States v. Oakes*,
    564 F.2d 384 (10th Cir. 1977) .......................................................................... 6

**Statutes:**

18 U.S.C. § 922(o) .................................................................................................. 1

26 U.S.C. § 5845(b) ............................................................................................... 1

**Other Authorities:**

ATF, *National Firearms Act Handbook* ¶ 7.2.4.1 (Apr. 2009) ............................... 3

*Bump-Stock Type Devices*,
    83 Fed. Reg. 66,514 (Dec. 26, 2018) ........................................................... 1, 4

## INTRODUCTION AND SUMMARY

Defendants-appellees respectfully respond to plaintiff's petition for en banc review. The panel's judgment was correct, conflicts with no decision of the Supreme Court, this Court, or any other circuit, and plaintiff identifies no issue warranting en banc consideration.

Federal law generally prohibits possession of "machinegun[s]": weapons that permit a shooter to fire "automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 922(o). In 2017, a gunman in Las Vegas, Nevada killed 58 people and wounded 500 more using legally obtained semiautomatic rifles that he had turned into automatic weapons by attaching commercially available devices known as bump stocks. These devices enable a shooter to fire hundreds of rounds per minute with a single pull of the trigger. After the Las Vegas shooting, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) reconsidered whether bump stocks are "machineguns" within the meaning of the National Firearms Act and the statutory bar on possession or sale of machine guns. The agency concluded that bump stocks fall within the terms of the statute, because bump stocks enable a shooter to initiate a cycle of continuous fire with a single pull of the trigger. *Bump-Stock Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018).

Plaintiff W. Clark Aposhian challenged the Rule and sought a preliminary injunction against its enforcement, which the district court denied. The court

concluded that the Rule correctly defined the terms "automatically" and "single function of the trigger" and correctly applied those terms to bump stocks. *Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1151-53 (D. Utah 2019). Plaintiff appealed, and a divided panel of this Court affirmed, concluding that plaintiff had not demonstrated a likelihood of success on the merits and that the remaining preliminary injunction factors also favored the government.

Plaintiff advances two grounds for en banc review. The first ground is that the panel considered the rule under the standards established by *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), although the government did not request deference. Plaintiff argues that doing so contravened decisions of this Court in part because the government did not seek deference. But this Court has never suggested that simply because the government did not advocate for application of *Chevron* the Court is precluded from applying *Chevron* where it believes that standard is appropriate. Adopting such a rule would be particularly anomalous here. The government has maintained that the Rule is "interpretive" rather than "legislative" and should be analyzed under the standards governing interpretive rules. Plaintiff, however, has urged that the rule is legislative. The Court agreed with plaintiff that the rule was legislative in character, concluded that the rule was issued in the exercise of delegated authority, and then applied the standard that governs legislative rules. Plaintiff cannot plausibly insist that the Court, having accepted his characterization of the rule, was then required to disregard *Chevron*.

The second ground advanced by plaintiff is that the panel erred in giving deference to the agency's interpretation because violating the ban on machine gun possession has potential criminal as well as civil consequences, invoking the rule of lenity. But the Supreme Court and this Court have repeatedly held that deference is appropriate even when the statute being interpreted may give rise to criminal proceedings, and plaintiff identifies no conflict between the decision here and those precedents.

Finally, rehearing is not warranted because the panel concluded that affirmance was required on the independent ground that plaintiff had failed to demonstrate the other prerequisites for a preliminary injunction. Plaintiff has not sought review of that holding, which compels affirmance.

## STATEMENT

**1.** ATF encourages manufacturers to submit novel weapons or devices to ATF for guidance about whether the weapon or device qualifies as a machinegun or other firearm under federal law. ATF established the classification process to help manufacturers "avoid an unintended classification and violations of the law," but also made clear that "classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations." ATF, *National Firearms Act Handbook* ¶ 7.2.4.1 (Apr. 2009). In recent years, ATF has received increasing numbers of classification requests for various types of bump stock devices, as inventors and manufacturers seek to produce "devices that permit shooters

to use semiautomatic rifles to replicate automatic fire," but do so "without converting these rifles into 'machineguns.'" 83 Fed. Reg. at 66,516.

ATF first addressed bump stock devices when it received a classification request for the "Akins accelerator." Op. 5. After initially concluding that device fell outside the scope of the statute, ATF later revisited its determination and concluded that the Akins Accelerator fell within the statutory definition of "machinegun," a determination upheld by the Eleventh Circuit. *Akins v. United States*, 312 F. App'x 197, 199 (11th Cir. 2009). Subsequently, in various classification letters, ATF concluded that that bump stocks that operated without an internal spring (unlike the Akins accelerator) were not machine guns. Op. 5.

After the Las Vegas shooting, ATF revisited this conclusion. Although ATF had not previously sought comments on classification or reclassification decisions, it did so with regard to these bump stocks in light of the strong public interest and to ensure the public was aware of potential changes to the agency's classification. *See* 83 Fed. Reg. at 66,523, 66,529. After full review, ATF concluded that bump stocks fell within the scope of the statutory definition although they did not use an internal spring.

**2.** The district court rejected plaintiff's request for a preliminary injunction, holding that the Rule provided the correct interpretation of the statutory terms at issue and correctly applied those terms to bump stocks. *Aposhian*, 374 F. Supp. 3d at 1151-53. A panel of this Court affirmed. As particularly relevant to plaintiff's

arguments on rehearing, the government explained that, in its view, the classification decision at issue here was an interpretive rather than a legislative rule. Plaintiff urged, however, that the Rule was legislative, and this Court accepted his argument. It concluded that the Rule was legislative because it was "intended to change the legal rights and obligations of bump-stock owners," because it discussed *Chevron* deference, and because it was published in the Code of Federal Regulations. Op. 13-15. Based on these conclusions, the Court held that it should view the Rule through the *Chevron* lens appropriate in review of legislative rules, rejecting plaintiff's argument that such consideration was forbidden.

The panel also rejected plaintiff's contention that *Chevron* is "inapplicable where the government interprets a statute that imposes criminal liability." Op. 18. As the panel observed, the Supreme Court in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 704 n.18 (1995), deferred to an agency's interpretation of a provision of the Endangered Species Act, notwithstanding the provision's criminal consequences; the panel further noted that this Court had deferred, as well, in similar contexts. Op. 19-21.

On the merits, the panel concluded that the statutory terms "automatically" and "single function of the trigger" were ambiguous as applied to bump stocks. Op. 25, 27. Proceeding to the second step of *Chevron*, the panel held that the Rule's understanding of those terms, and the application of those terms to bump stocks, were a "permissible reading of the statute." Op. 29.

The panel first held that the Rule's definition of "single function of the trigger" "accords with how some courts have read the statute" and "how the phrase 'single pull of the trigger' was understood at the time of the enactment" of the National Firearms Act. Op. 29 (quoting *Guedes v. ATF*, 920 F.3d 1, 31 (D.C. Cir. 2019)). And the panel observed that the Rule's "interpretation of 'single function of the trigger' accords with how this court has interpreted the statute." Op. 30 (citing *United States v. Oakes*, 564 F.2d 384 (10th Cir. 1977)).

The panel also recognized that the Rule's definition of "automatically" "accords with the everyday understanding of the word 'automatic.'" Op. 30 (quoting *Guedes*, 920 F.3d at 31). And a bump stock qualified under that definition, the panel explained, because it "performs *part* of the work usually done by hand at a predetermined point in the operation, under conditions fixed for it by the shooter." Op. 31. The interpretation adopted in the Rule also "focuses the inquiry about what needs to be automated precisely where the statute does: the ability of the trigger function to produce 'more than one shot, without manual reloading,'" and squared with the interpretation adopted by the only other appellate decision to address the question. *Id.*

As the panel further recognized, the remaining factors for injunctive relief favored the government. The panel held that plaintiff's alleged irreparable harm—"a generalized separation-of-powers violation"—could not suffice, particularly where plaintiff had not made any constitutional argument against the Rule. Op. 32. And the

panel held that the harm to the government and public interest from a preliminary injunction exceeded any harm to plaintiff, given the important public interest in "banning the possession and transfer of machine guns" to protect both the general public and law enforcement. Op. 35.

**3.** Judge Carson dissented. He would have rejected the application of *Chevron* deference both because "the government explicitly disavowed any reliance" on it, Dissent 14, and because in his view "*Chevron* is … inapplicable" where a statute "'carries the possibility of criminal sanctions.'" Dissent 15-16 (quoting *Guedes v. ATF*, 140 S. Ct. 789, 790 (2020) (statement of Gorsuch, J., respecting denial of certiorari)). On the merits of the Rule, Judge Carson concluded that the phrase "single function of the trigger" looked "*only* to the action of the trigger," regardless of any actions by the shooter, Dissent 7, and could not qualify as a machine gun "even though the shooter must take only a single volitional action," Dissent 10. Judge Carson also stated that the term "automatically," though correctly defined, did not apply to a bump stock, because, in his view, "the constant forward pressure that the shooter must apply with his or her nontrigger hand prevents that label." Dissent 11.

Judge Carson also disagreed with the majority's holding that plaintiff had failed to establish irreparable harm. Judge Carson would have held that the government had waived any argument to the contrary, despite "[p]laintiff's failure to correctly identify the exact parameters of that harm." Op. 19.

**ARGUMENT**

**A.   Having Concluded That the Rule is Legislative, the Court Was Not Precluded From Applying *Chevron*.**

**1.**  Plaintiff contends that the panel decision "deepens a split within the Tenth Circuit" about when and whether *Chevron* deference can be "waived."  Pet. 8.  That contention misunderstands both this case and this Court's precedent.

As the panel explained, the first question before it was whether the Rule was a legislative rule—of a type usually entitled to *Chevron* deference—or an interpretive rule, which "enjoy no *Chevron* status as a class."  Op. 13 (quotation omitted).  The government has consistently maintained that the Rule is an interpretive rule.  *Id.*  But the panel concluded that the Rule is a legislative rule issued under "two separate delegations of legislative power"—a Rule that was, in its view, "intended to change the legal rights and obligations of bump-stock owners."  Op. 13-15 (quoting *Guedes*, 920 F.3d at 18-19).  Having concluded that the rule was legislative, the panel proceeded to apply the *Chevron* inquiry appropriate in reviewing such rules.

Plaintiff does not dispute the Court's conclusion that the Rule was intended to be legislative.  Nor could he, since he urged that conclusion on the panel.  *See, e.g.*, Reply 7 (stating that "three factors conclusively demonstrate that that the Final Rule is a legislative rule"—the same three factors the panel adopted); Reply 10 ("[T]he Final Rule, on its own terms, purports to be a legislative rule.").  Plaintiff instead contends that because the government urged that the rule was interpretive, this Court is

precluded from engaging in the applicable *Chevron* analysis when it reaches a different conclusion. But a panel is not "limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). In keeping with this principle, the government stated that if the panel (like the D.C. Circuit) concluded that the Rule was legislative, it necessarily followed that plaintiff was not entitled to a preliminary injunction. Gov't Br. 42.

Unsurprisingly, this Court has never endorsed the restriction plaintiff envisions, and the decision here is entirely consistent with the two decisions on which plaintiff relies. In *Hydro Resources, Inc. v. EPA*, 608 F.3d 1131 (10th Cir. 2010) (en banc), the Court observed that "we need not decide whether EPA's interpretation of the statute is entitled to deference" because the EPA had not sought deference. "In these circumstances, when the agency doesn't ask for deference to its statutory interpretation, 'we need not resolve the . . . issues regarding deference which would be lurking in other circumstances." *Id.* at 1146 (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)). As the panel correctly explained, "'need not' does not mean 'may not,'" Op. 16; nothing in *Hydro Resources* forecloses application of *Chevron* where a panel determines it is appropriate. Nor is it surprising that the Court found no need to address *Chevron* deference. *Hydro Resources* involved the Environmental Protection Agency's application of a statute defining the term "Indian country"—a statute that "clearly d[id] not fall within EPA's particular expertise or charge to

administer," as it did not "involv[e] environmental regulation."  608 F.3d at 1146; *see id.* (noting that "[c]ourts do not … afford the same deference to an agency's interpretation of a statute lying outside the compass of its particular expertise and special charge to administer").  Similarly, in *Estate of Cowart,* the government had altered its position on the issue in question, and did not seek deference for its new "interpretation formulated during litigation."  505 U.S. at 476.  Nothing about these cases precludes a court from applying *Chevron* where it deems that doctrine appropriate.

*Hays Medical Center v. Azar*, 956 F.3d 1247 (10th Cir. 2020), is even further afield.  The Court in that case *upheld* the challenged agency action without resolving issues of deference, explaining that "whether we apply *Chevron* or arbitrary-and-capricious review does not materially alter the outcome or change our analysis."  956 F.3d at 1264 n.18; *accord id.* ("[E]liding a formal *Chevron* analysis does not materially alter … our consideration of the parties' arguments.").  In so doing, the Court noted in dicta that a "threadbare citation" to *Chevron* was insufficient to raise the issue, *id.* at 1264 n.18.  But whether a court is obliged to consider an argument about deference is an altogether different question from whether a court is barred from applying the appropriate level of deference.  *See also Sorenson Commc'ns, Inc. v. FCC*, 567 F.3d 1215, 1223 (10th Cir. 2009) ("The agency's own label for its action [as legislative or interpretive] is not dispositive.").

There is thus no basis for plaintiff's contention that the panel's decision creates a "conflict between those binding precedents and the panel's suggestion that *Chevron* deference is a non-waivable standard of review." Pet. 13. The issue here is not whether the government can waive a deference argument. Instead, the question is whether the Court is precluded from applying *Chevron* where it decides that a rule is legislative, despite the government's contentions that the rule is interpretive. Having decided on the former, nothing in this Court's cases or any other precluded the panel from applying the standard applicable to legislative rules. *See Kamen*, 500 U.S. at 99. And the panel specifically noted that its decision did not address the question of whether *Chevron* is "a non-waivable standard of review." *See* Op. 17-18 n.6.

Plaintiff's suggestion that the Court failed to "respect the Executive's decision not to make policy choices in the interpretation of Congress's handiwork," Pet. 12 (quoting *Guedes*, 140 S. Ct. at 790 (statement of Gorsuch, J.)), is misplaced. This case does not involve a policy choice. It involves the agency's application of the statutory definition of machine gun. The government believed and believes that its interpretation is an interpretive rule. But the panel's conclusion, urged by plaintiff himself, was that the government *had* intended "to make policy choices in the interpretation of Congress's handiwork" by engaging in legislative rulemaking. *Compare* Op. 12-15, *with Guedes*, 140 S. Ct. at 789 (statement of Gorsuch, J.) (describing the rule as an "interpretive rule.").

11

In sum, plaintiff points to no conflict among this Court's cases on the purported issue of *Chevron* "waiver," much less a reason to reexamine the panel's case-specific analysis of the Rule's legislative character en banc. Although plaintiff invites the Court to go into conflict with the D.C. Circuit's decision reviewing the Rule under *Chevron*, *see Guedes*, 920 F.3d at 22, he has provided no plausible basis on which that invitation can be accepted.

## B. According Deference to an Interpretation of a Statute with Criminal as well as Civil Penalties Does Not Conflict with the Precedents of the Supreme Court and this Court.

Plaintiff urges that the panel's decision conflicts with this Court's decisions addressing deference to an agency's interpretations of statutes that impose potential criminal as well as civil consequences. The argument fails in all respects.

As an initial matter, although plaintiff repeatedly invokes the rule of lenity, he misunderstands its scope. The Supreme Court and this Court have explained that "[t]he simple existence of some statutory ambiguity … is not sufficient to warrant application of th[e] rule, for most statutes are ambiguous to some degree." *Muscarello v. United States*, 524 U.S. 125, 138 (1998); Op. 10 n.4. Rather, the rule of lenity applies only where, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Maracich v. Spears*, 570 U.S. 48, 76 (2013). In other words, the rule of lenity operates "at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being

lenient to wrongdoers."  *Id.* (quotation omitted); *United States v. Blake*, 59 F.3d 138, 140 (10th Cir. 1995) ("[T]he mere assertion of an alternative interpretation is not sufficient to bring the rule into play.").

Plaintiff makes no attempt to demonstrate that any ambiguity here involves more than the "assertion of an alternative interpretation," and does not identify a "grievous ambiguity or uncertainty."  Instead, plaintiff urges that the panel erred in rejecting his contention that there is "a general rule against applying *Chevron* to agency interpretations of statutes with criminal law implications."  Op. 18; *see* Pet. 2, 3.

Plaintiff repeatedly emphasizes this Court's statement that deference to an agency's interpretation of a criminal provision cannot be "in conflict with interpretive norms regarding criminal statutes."  Pet. 16 (quoting *NLRB v. Oklahoma Fixture Co.*, 332 F.3d 1284, 1287 (10th Cir. 2003) (en banc)).  That case makes clear, however, that there is no conflict between according deference to an agency's understanding of a statute and applying "interpretive norms."  This Court noted that "[t]he Supreme Court has held that 'some degree of deference' is owed to an agency's interpretation of a criminal provision, although the degree of deference may be dependent upon considerations of the agency's particular expertise and the policies implicated by the criminal statute in question, as well as the extent to which Congress has charged the agency with administering the criminal statute."  *Oklahoma Fixture*, 332 F.3d at 1287 (quoting *Babbitt,* 515 U.S. at 703–04 & n.18).  With regard to the matter at issue, the Court noted that the National Labor Relations Board "has special expertise regarding

the labor law implications of the statute," and that "[i]f we determine the statute is ambiguous, therefore, it is appropriate to afford some deference to the Board interpretation as long as it is a reasonable or permissible one, and not in conflict with interpretive norms regarding criminal statutes." *Id.* Neither *Oklahoma Fixture* nor any other decision of this Court suggests that deference is improper whenever a regulation interprets a statute with potential criminal consequences. *See United States v. Hubenka*, 438 F.3d 1026, 1032-34 (10th Cir. 2006) (deferring without discussing or analyzing lenity); *United States v. Atandi*, 376 F.3d 1186, 1189 (10th Cir. 2004) (same).

Although plaintiff asserts that the panel's decision "contradicted … Supreme Court precedent," Pet. 15, he relies primarily on separate statements of justices concerning petitions for certiorari,  Pet. 17, and the only Supreme Court decision cited as the basis of a conflict—*United States v. Apel*, 571 U.S. 359 (2014)—addressed neither the rule of lenity nor *Chevron* deference. *Apel* did not refer to the rule of lenity, and as the panel noted, the only interpretive materials involved there were "Executive Branch documents that were not intended to be binding"—materials not entitled to *Chevron* deference in any event.  Op. 22 (quoting *Guedes*, 920 F.3d at 25).  And where the Supreme Court *has* addressed the application of the rule of lenity, it has rejected the argument "that the rule of lenity should foreclose any deference" to a regulation with criminal consequences issued by an agency delegated authority to administer a particular statute. *Babbitt,* 515 U.S. at 704 n.18.

**C.    En Banc Review Would Also Be Unwarranted Because Plaintiff Has Not Demonstrated The Other Prerequisites For Preliminary Injunctive Relief.**

Finally, rehearing is not warranted because plaintiff has failed to demonstrate the other prerequisites for a preliminary injunction.  The panel explained that "[a]lthough we could affirm the district court's denial of preliminary injunctive relief solely on the ground that Mr. Aposhian has failed to demonstrate a substantial likelihood of success on the merits, we also conclude that Mr. Aposhian has not met the other prerequisites for preliminary relief."  Op. 31-32.  Plaintiff has not sought rehearing as to that holding, Pet. 7 n.1, which independently requires affirmance of the denial of a preliminary injunction and thus makes this a poor candidate for en banc review.

It was incumbent on plaintiff to establish not only a likelihood of success on the merits, but also to show "irreparable harm," "that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and … that the injunction, if issued, will not adversely affect the public interest."  *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted).  In his brief on appeal, plaintiff's only claim of irreparable harm was "a generalized separation-of-powers violation," Op. 32, which the Court held could not satisfy the requirement of irreparable injury.  *See also* Dissent 20 n.6.  Moreover, even if plaintiff could demonstrate even some modicum of harm based on deprivation of a bump stock while his claim is litigated to final judgment (which would be a different

harm from the harm he advanced before the panel), he does not take issue with the panel's conclusion—not controverted by the dissent—that the balancing of harms and the public interest favored the government.  Op. 34-35.  Plaintiff's assertions do not outweigh the importance of "banning the possession and transfer of machine guns" to protect both the general public and law enforcement.  Op. 35.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be denied.

Respectfully submitted,

ETHAN P. DAVIS
  *Acting Assistant Attorney General*

JOHN W. HUBER
  *United States Attorney*

MARK B. STERN
MICHAEL S. RAAB
ABBY C. WRIGHT

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*
  *bradley.a.hinshelwood@usdoj.gov*

July 2020

## CERTIFICATE OF COMPLIANCE

This response is consistent with Federal Rule of Appellate Procedure 40(b)(1), limiting petitions for rehearing to 3,900 words, because it contains 3,898 words. This response was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that (1) all required privacy redactions have been made; (2) any paper copies of this document submitted to the Court are exact copies of the version filed electronically; and (3) the electronic submission was scanned for viruses and found to be virus-free.

*s/ Brad Hinshelwood*
Brad Hinshelwood

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2020, I electronically filed the foregoing

response with the Clerk of the Court for the United States Court of Appeals for the

Tenth Circuit by using the appellate CM/ECF system.  Participants in the case are

registered CM/ECF users, and service will be accomplished by the appellate

CM/ECF system.

*s/ Brad Hinshelwood*
Brad Hinshelwood