No. 19-4036

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

W. CLARK APOSHIAN,
      Plaintiff-Appellant,

v.

WILLIAM P. BARR, Attorney General of the United States, et al.,
      Defendants-Appellees.

On Appeal from the United States District Court
for the District of Utah
The Honorable Jill N. Parrish, United States District Judge
No. 2:19-cv-37

**BRIEF OF *AMICUS CURIAE* CATO INSTITUTE
IN SUPPORT OF PLAINTIFF-APPELLANT
ON PETITION FOR REHEARING EN BANC**

Ilya Shapiro
 *Counsel of Record*
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 842-0200
ishapiro@cato.org

October 7, 2020

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for amicus certifies that (1) amicus does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in amicus.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

INTEREST OF *AMICUS CURIAE* ......................................................................1

ARGUMENT: COURTS SHOULDN'T DEFER TO THE AGENCY HERE BECAUSE THE AGENCY "HAS NO PARTICULAR EXPERTISE IN DEFINING A TERM UNDER FEDERAL LAW"......................................................4

CONCLUSION .....................................................................................................7

CERTIFICATE OF COMPLIANCE ....................................................................8

CERTIFICATE OF DIGITAL SUBMISSION .....................................................9

CERTIFICATE OF SERVICE ............................................................................10

# TABLE OF AUTHORITIES

Cases

*Abramski v. United States*, 573 U.S. 169 (2014) ...................................................... 7

*Barnhart v. Walton*, 535 U.S. 212 (2002) ................................................................. 2

*INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999) ........................................................... 3

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) ......................................................... 3

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) .................................................................... 2

*Marbury v. Madison*, 5 U.S. 137 (1803) ................................................................... 2

*Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680 (1991) ........................................... 2

*United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76 (1820) ...................................... 7

*Wong Park v. Attorney General* 472 F.3d 66 (3d Cir. 2006) .................................... 5

Statutes and Regulations

18 U.S.C. § 922 ........................................................................................................... 6

18 U.S.C. § 923 ........................................................................................................... 6

18 U.S.C. § 926(a) ...................................................................................................... 4

26 U.S.C. § 7801(a) .................................................................................................... 4

26 U.S.C. § 7805(a) .................................................................................................... 4

42 U.S.C. § 7411 ......................................................................................................... 4

28 CFR § 0.130(a) ...................................................................................................... 5

83 Fed. Reg. 66,514 (2018) ........................................................................................ 6

Other Authorities

Kent Barnett, *Improving Agencies' Preemption Expertise with* Chevmore *Codification*, 83 Fordham L. Rev. 587 (2014) ..................................................... 5

# INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute was established in 1977 as a nonpartisan public policy research foundation dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to promote the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, issues the annual *Cato Supreme Court Review*, and files *amicus* briefs with the courts.

This case is of central concern to Cato because it concerns the proper delineation of the separation of powers. If the judicial branch is to "say what the law is" and the executive branch is to enforce law rather than make it, then this Court must clarify whether and how much deference judges should give to administrative agencies—particularly when that determination is not dependent on an agency's congressionally vested expertise. The implications of this case extend far beyond bump stocks.

---

[1] Pursuant to Fed. R. App. P. 29, counsel for *amicus* states that all parties have consented to the filing of this brief. Further, no party's counsel authored any part of this brief and no person other than *amicus* made a monetary contribution to fund its preparation or submission.

# SUMMARY OF ARGUMENT

*Chevron* deference "reflects a sensitivity to the proper roles of the political and judicial branches." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696 (1991). Because "the resolution of ambiguity in a statutory text is often more a question of policy than of law," courts assume that Congress intends for agencies, and not judges, to make certain sorts of regulatory decisions. *Id.*

Still, not all statutory ambiguities are suitable for the *Chevron* framework. As recently observed by the Supreme Court, some interpretive issues may fall more naturally into a judge's bailiwick." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019). For these sorts of questions, which exist outside an agency's competence, it is incumbent on courts "to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). In discerning which branch—agencies or courts—gets interpretive primacy, courts perform a context-driven inquiry that depends on "the interstitial nature of the legal question" immediately at hand. *Barnhart v. Walton*, 535 U.S. 212, 222 (2002). With this case-by-case approach, courts look foremost to whether the interpretive question "in some way implicate[s]" the agency's "substantive expertise." *Kisor*, 139 S. Ct. at 2417.

Under *Chevron* deference, therefore, the role of agency expertise is to assist courts in deciding the proper roles of the political and judicial branches. When a congressional delegation involves agency expertise, then *Chevron* deference is

appropriate because it signals that Congress intended for the agency to assume interpretive primacy. When, however, a court is comparatively expert on the statutory question, then it is the judge's duty to find the best meaning of the statute. *Compare INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987) (denying deference because judges are more expert in resolving "pure questions of law") *with INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (granting deference because the agency is more expert on "questions of foreign relations").

Here, there is no evidence that the bump stock rule was "peculiarly dependent upon facts within the congressionally vested expertise," as the *en banc* court frames the matter in its fifth question. Because the Justice Department merely engaged in legal analysis, the administrative record is no more expert than any of the Department's legal briefs. The statute, moreover, involves criminal sanctions, and so it falls squarely within a judge's bailiwick. Thus, the role of expertise makes it clear that *Chevron* deference is unwarranted in this case.

# ARGUMENT:
## COURTS SHOULDN'T DEFER TO THE AGENCY HERE BECAUSE THE AGENCY "HAS NO PARTICULAR EXPERTISE IN DEFINING A TERM UNDER FEDERAL LAW"

Before resorting to deference, courts first must determine whether the *Chevron* framework is suited for the statutory question at controversy. This initial inquiry is contextual, and it focuses on whether the agency or the court is comparatively expert to resolve the textual ambiguity.

Sometimes, a statute directly implicates agency expertise by including scientific or economic factors for the agency to consider. *See*, *e.g.*, 42 U.S.C. § 7411 (delegating to the Environmental Protection Agency a duty to promulgate emissions standards for new stationary sources of criteria pollutants). By contrast, the bump stock rule rests on a catch-all delegation to "prescribe all needful rules and regulations." 18 U.S.C. § 926(a). The statute neither requires nor otherwise suggests the involvement of agency expertise in the formulation of the bump stock rule.

In its fifth question, the *en banc* court asks whether "the *Bureau of Alcohol, Tobacco and Firearms* [was] peculiarly dependent upon facts within the congressionally vested expertise of that agency?" (emphasis added). Yet the attorney general, not the BATF, is the delegee of lawmaker authority. *See id.*; 26 U.S.C. § 7801(a)(2)(A), § 7805(a) (assigning responsibility to the attorney general for regulations and enforcement under the National Firearms Act and Gun Control Act). Although the Department of Justice has delegated the responsibility for

administering and enforcing these statutes to the BATF, the latter remains "subject to the direction of the Attorney General and the Deputy Attorney General." *See* 28 CFR § 0.130(a)(1)–(2). The attorney general still calls the shots.

It's important for the court to keep in mind that the Justice Department, and not the BATF, promulgated the bump stock rule. The distinction is crucial because "the Attorney General has no particular expertise in defining a term under federal law, yet it is what federal courts do all the time." *Wong Park v. Attorney General* 472 F.3d 66, 71 (3d Cir. 2006) (citations and quotations omitted).

Turning to the administrative record, there is no indication that the agency employed its expertise during the rulemaking. Rather than technical know-how, the attorney general justified the bump stock rule based on an *ad hoc* "extensive legal analysis." As a practical matter, the government's avowed expertise is no different than the analysis that informs every brief submitted by the Justice Department, to which courts obviously do not confer *Chevron* deference. Indeed, if "legal analysis" is the operative criterion for determining who should interpret the phrase "machineguns," then this Court is the more expert institution.

To be sure, agencies may acquire what scholars call "legislative expertise," or insight into legislative history and congressional intent through years of enforcing a statute. *See* Kent Barnett, *Improving Agencies' Preemption Expertise with* Chevmore *Codification*, 83 Fordham L. Rev. 587, 591-92 (2014). But nothing of this

sort coincided the development of the bump stock rule, which instead reflected an abrupt change in what had been the government's consistent and long-held construction of the statute.

In ten rulings from 2008 and 2017, the BATF interpreted the phrase "machineguns" to exclude devices like those at issue in this case. 83 Fed. Reg. 66,514, 66,517-18 (2018) (describing the letter rulings). With the bump stock rule, however, the agency reversed course and outlawed these devices. What changed? According to the Justice Department, the problem with its prior ten rulings was that they "did not include extensive legal analysis of the statutory terms"—even though these terms were the *sine qua non* of the rulings. *Id.* at 66,516. In effect, the government claims that its prior steady interpretation was wrong because the agency had never studied the law it was enforcing. Far from demonstrating expertise, the administrative record raises questions about the agency's proficiency.

In addition to an imprecise delegation and a dubious rulemaking, the bump stock rule imposes criminal penalties, which is another indication that the Justice Department should not be granted interpretive primacy over the statutory definition of "machineguns." *See* 18 U.S.C. § 922 (delegating authority for criminal prohibitions), 18 U.S.C. § 923 (delegating authority for a licensing scheme). Regardless how such duel civil-criminal regimes affect *Chevron* deference, the criminal component of the bump stock rule further demonstrates the courts'

comparative expertise in this controversy. As the Supreme Court stated in *Abramski v. United States*, "criminal laws are for courts, not for the Government, to construe." 573 U.S. 169, 191 (2014). Within this realm, the rule of lenity is a product of judicial expertise. *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (describing rule of rule of lenity as being "perhaps not much less old than construction itself").

## CONCLUSION

Ultimately, this Court may or may not agree with the Justice Department that its interpretation is the best reading of "machineguns"—it's not—but the final decision must come from the judiciary. Deference has no role to play.

Dated: October 7, 2020

Respectfully submitted,

Ilya Shapiro
  *Counsel of Record*
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 842-0200
ishapiro@cato.org

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

(1) This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 1,428 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

(2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14-point Times New Roman font.

Dated: October 7, 2020

By:

Ilya Shapiro
   *Counsel of Record*
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 842-0200
ishapiro@cato.org

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) All required privacy redactions have been made in accordance with 10th Cir. R. 25.5;

(2) The hard copies to be submitted to the court are exact copies of the version submitted electronically; and

(3) The electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, ESET Endpoint Antivirus for Mac, and is free of viruses.


Dated: October 7, 2020

By:

Ilya Shapiro
  *Counsel of Record*
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 842-0200
ishapiro@cato.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on October 7, 2020, which will automatically send notification to the counsel of record for the parties.

Dated: October 7, 2020

By:

Ilya Shapiro
    *Counsel of Record*
CATO INSTITUTE
1000 Mass. Ave. N.W.
Washington, D.C. 20001
(202) 842-0200
ishapiro@cato.org