# In the United States Court of Appeals for the Tenth Circuit

◆

## W. CLARK APOSHIAN,

*Plaintiff-Appellant,*

v.

## WILLIAM P. BARR, et al.,

*Defendants-Appellees.*

◆

On Appeal from the United States
District Court for the District of Utah
Case No. 2:19-cv-37

**MOTION FOR LEAVE TO FILE AND BRIEF OF *AMICI CURIAE*
FIREARMS POLICY COALITION AND FIREARMS POLICY
FOUNDATION IN SUPPORT OF APPELLANT AND REVERSAL**

◆

GEORGE A. MOCSARY
UNIVERSITY OF WYOMING
COLLEGE OF LAW
1000 East University Avenue
Department 3035
Laramie, WY 82071
(307) 766-5262
gmocsary@uwyo.edu

ERIK S. JAFFE
SCHAERR | JAFFE LLP
1717 K Street, NW
Washington, DC 20006
(202) 787-1060
ejaffe@schaerr-jaffe.com

JOSEPH G.S. GREENLEE
  *Counsel of Record*
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
jgr@fpchq.org

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici Curiae* make the following statements:

**Firearms Policy Coalition** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

**Firearms Policy Foundation** has no parent corporation, nor is there any publicly held corporation that owns more than 10% of its stock.

/s/ *Joseph G.S. Greenlee*
Joseph G.S. Greenlee
Counsel for *Amici Curiae*

# UNOPPOSED MOTION FOR LEAVE TO FILE

Pursuant to Fed. R. App. P. 29(b), the Firearms Policy Coalition and Firearms Policy Foundation respectfully request leave to submit a brief as *amici curiae* in support of Appellant and reversal.

This motion is unopposed. All parties have consented to the filing of the proposed brief.

**(A) The movants' interests.**

**Firearms Policy Coalition (FPC)** is a 501(c)(4) nonprofit membership organization incorporated under the laws of Delaware, with its principal place of business in Sacramento, California, and with members and supporters throughout the country. FPC's primary mission is to protect and defend the Constitution of the United States and the People's deeply rooted rights, privileges, and immunities. FPC serves its members and the public through direct legislative advocacy, grassroots advocacy, legal efforts, research, education, operation of a hotline, and other programs.

**Firearms Policy Foundation (FPF)** is a nonprofit membership organization that serves its members and the public through charitable

programs including research, education, and legal efforts, with a focus on the Second Amendment and other constitutional rights.

*Amici*'s interests are substantially affected by the outcome of this case because they are each involved in litigation involving many of the same issues presented here. *See Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,* No. 18-cv-2988 (D.D.C.); *Firearms Policy Coalition, Inc. v. Whitaker,* No. 18-3083 (D.D.C.). Additionally, *amici* have an interest in ensuring that the constitutional principles at issue in this case—including the rule of lenity, separation of powers, and due process—are protected.

Moreover, the constitutional rights of *amici* organizations' members who reside within this Court's jurisdiction will be directly affected by the holding in this case.

### (B) Why the amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.

*Amici* respectfully submit that they offer unique perspectives and knowledge that will assist the Court beyond the insight the parties have provided. Having litigated these very issues before a sister Circuit, FPC and FPF are able to frame and address the issues in a productive manner. As organizations dedicated to protecting the Constitution, *amici* bring

expertise on the meanings and purposes of the constitutional protections at issue in this case.

*Amici* explain that *Chevron* deference is not a rule of statutory construction, but instead a description of the consequences of an implied or presumed delegation of legislative authority; why the application of the rule of lenity (rather than *Chevron* deference) is critical for protecting due process and the separation of powers; and why *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995), whatever value it once had, has been effectively overruled and should not be relied upon today. This brief—unlike any other—demonstrates why *Chevron* deference is inapplicable in this case.

*Amici* respectfully request that the Court grant leave to file their *amici curiae* brief in support of Appellant and reversal.

Respectfully submitted,

/s/ *Joseph G.S. Greenlee*
JOSEPH G.S. GREENLEE
  *Counsel of Record*
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
jgr@fpchq.org

GEORGE A. MOCSARY
UNIVERSITY OF WYOMING
COLLEGE OF LAW
1000 East University Avenue
Department 3035
Laramie, WY 82071
(307) 766-5262
gmocsary@uwyo.edu

ERIK S. JAFFE
SCHAERR | JAFFE LLP
1717 K Street, NW
Washington, DC 20006
(202) 787-1060
ejaffe@schaerr-jaffe.com

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

UNOPPOSED MOTION FOR LEAVE TO FILE .....................................ii

TABLE OF AUTHORITIES ...................................................vii

STATEMENT OF *AMICI CURIAE* ..........................................1

SUMMARY OF ARGUMENT ................................................1

ARGUMENT .............................................................2

   I.  *Chevron* deference is a description of the consequences of an
implied or presumed delegation of legislative authority. ..............2

  II.  The rule of lenity implements separation of powers and due
process principles. ..........................................................3

 III.  *Babbitt* does not support *Chevron* deference in this case and it is
doubtful whether it is good law. ....................................8

CONCLUSION ..........................................................10

CERTIFICATE OF COMPLIANCE......................................12

CERTIFICATE OF SERVICE..............................................13

# TABLE OF AUTHORITIES

**Cases**

*Abramski v. United States*, 573 U.S. 169 (2014) .................................... 10

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995) ................................................................................. 8

*Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722 (6th Cir. 2013) ............................................................................... *passim*

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ................................................................................. 2

*Crandon v. United States*, 494 U.S. 152 (1990) ....................................... 6

*Gundy v. United States*, 139 S. Ct. 2116 (2019) ...................................... 7

*INS v. St. Cyr*, 533 U.S. 289 (2001) .......................................................... 7

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) .................................................... 7

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ....................................................... 9

*McNally v. United States,* 483 U.S. 350 (1987) ....................................... 5

*Staples v. United States*, 511 U.S. 600 (1994) ......................................... 9

*United States v. Apel*, 571 U.S. 359 (2014) ............................................ 10

*United States v. Bass*, 404 U.S. 336 (1971) .............................................. 4

*United States v. Cardiff*, 344 U.S. 174 (1952) .......................................... 6

*United States v. Davis*, 139 S. Ct. 2319 (2019) ........................................ 8

*United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992) ......... 5, 9

*United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76 (1820) ...................... 4

*Whitman v. United States*, 135 S. Ct. 352 (2014) ................................. 8, 9

*Yates v. United States*, 574 U.S. 528 (2015)................................................5

**Other Authorities**

1 Blackstone, COMMENTARIES ....................................................5

Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L.
   Rev. 315 (2000)................................................................ 4, 7

JOURNAL OF THE CONSTITUTIONAL CONVENTION, KEPT BY JAMES
   MADISON (E.H. Scott, ed. 1893) ...........................................5

## STATEMENT OF *AMICI CURIAE*

Firearms Policy Coalition is a nonprofit organization defending constitutional rights through legislative and grassroots advocacy, litigation, education, and outreach programs. Firearms Policy Foundation is a nonprofit organization serving its members and the public through charitable programs including research, education, and legal efforts. Both *amici* challenged ATF's bump-stock rule in the D.C. Circuit, including the still-pending *Guedes v. ATF*, 18-cv-2988 (D.D.C.).[1]

## SUMMARY OF ARGUMENT

*Chevron* deference is neither a standard nor a tool of interpretation. Rather, it is a description of presumed congressional delegation of legislative decision-making authority and a framework for evaluating the consequences of such presumed delegation. So understood, the relation between *Chevron* deference, the rule of lenity, and how to address an executive agency's failure to exercise delegated legislative authority becomes simple to resolve. Implied delegations of legislative authority

---

[1] All parties consented to the filing of this brief. No counsel for a party authored this brief in any part. No party or person other than *amici* and their members contributed money intended to fund the brief's preparation or submission.

are suspect, particularly where the premise of such implication is a congressional failure to use clear statutory language, thus requiring legislative policy decisions by the executive branch. Such suspicion should become prohibitory where a statute bearing criminal penalties is involved. Separation of powers precludes executive definition of crimes.

Even were such delegation in the criminal or mixed context permissible, the failure or refusal affirmatively to exercise delegated discretion would eliminate the premise for *Chevron* deference.

## ARGUMENT

### I. *Chevron* deference is a description of the consequences of an implied or presumed delegation of legislative authority.

*Chevron* deference is based on the inference that ambiguous statutory language was intended to delegate authority to the executive branch to make legislative decisions left unanswered by the statute in question. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44, 865-66 (1984) (addressing agency "'formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress'"; "Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit"; statutory gaps requiring "reconciling conflicting policies" can result from congressional failure to

"consider the question" or inability to "forge a coalition on either side of the question"; applying deference for "resolving the competing interests" Congress inadvertently or intentionally did not resolve).

*Chevron* does not purport to be a tool to discover the meaning of statutory language. It applies only where the meaning of the statute is sufficiently indeterminate as to leave more than one plausible reading. From such indeterminacy, *Chevron* presumes an implied desire by Congress to have the executive branch make the *policy* choice as to which meaning *should* be selected. That delegation, however, is improper in the context of a statute with criminal applications, and remains unexercised—and hence deference is inapplicable—where the agency denies any ambiguity or policy discretion in the first place, or simply declines to make the substantive policy choice presented by any ambiguity.

## II.    The rule of lenity implements separation of powers and due process principles.

Because the rule of lenity is an interpretive canon implementing constitutional and pre-constitutional principles, it should apply before *Chevron* deference. It is a tool for deciding whether a statute with criminal applications is sufficiently ambiguous to pose an improper

delegation to the executive. That is, the canon serves to cabin the executive's reach in the criminal context. It is, therefore, at odds with any delegation implied from ambiguity.

The rule of lenity is one of "the most venerable and venerated of interpretive principles," *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 731 (6th Cir. 2013) (Sutton, J., concurring), and is deeply "rooted in a constitutional principle," Cass R. Sunstein, *Nondelegation Canons*, 67 U. Chi. L. Rev. 315, 332 (2000). As Chief Justice Marshall observed, the rule of lenity "is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820); *see also United States v. Bass*, 404 U.S. 336, 348 (1971) (rule of lenity driven by need to provide "fair warning . . . of what the law intends to do if a certain line is passed" and assurance that "legislatures . . . define criminal activity").

Legislative definition of crimes has "long been part of our tradition." *Bass*, 404 U.S. at 348. Madison explained, "[n]o maxim was better

established" than "that the power of making, ought to be kept distinct from that of expounding, the laws." JOURNAL OF THE CONSTITUTIONAL CONVENTION, KEPT BY JAMES MADISON 400 (E.H. Scott, ed. 1893).[2]

Based on such tradition and principles, the Supreme Court has long held that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Yates v. United States*, 574 U.S. 528, 547-48 (2015) (citation omitted). The rule of lenity "is *not* a rule of administration," but "a rule of statutory construction whose purpose is to help give authoritative meaning to statutory language." *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 n.10 (1992) (emphasis added). "[W]hen there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States,* 483 U.S. 350, 359-60 (1987) (citations omitted).

The rule is particularly important where agencies can define and, especially as in this case, redefine, crimes. *See Carter*, 736 F.3d at 731-

---

[2] Blackstone observed that "[i]n all tyrannical governments the supreme magistracy, or the right both of making and of enforcing the laws, is vested in one and the same man, or one and the same body of men; and wherever these two powers are united together, there can be no public liberty." 1 Blackstone, COMMENTARIES at 146.

32 (Sutton, J., concurring).[3] Because agencies have a natural tendency to broadly interpret the statutes they administer, deference in the criminal context "would turn the normal construction of criminal statutes upside-down, replacing the doctrine of lenity with a doctrine of severity." *Crandon v. United States*, 494 U.S. 152, 178 (1990) (Scalia, J., concurring).

Lenity is applied before any implication that Congress delegated legislative authority to executive agencies. "Rules of interpretation bind all interpreters, administrative agencies included. That means an agency, no less than a court, must interpret a doubtful criminal statute in favor of the defendant." *Carter*, 736 F.3d at 731. "If you believe that *Chevron* has two steps, you would say that the relevant interpretive rule—the rule of lenity—operates during step one. Once the rule resolves an uncertainty at this step, 'there [remains], for *Chevron* purposes, no

---

[3] The ATF's complete reversal on the legality of bump stocks means that well-meaning citizens, like Mr. Aposhian, who detrimentally relied on the ATF's ten letter rulings, must now forfeit their property or face incarceration. *See United States v. Cardiff*, 344 U.S. 174, 176 (1952) ("Words which are vague and fluid may be as much of a trap for the innocent as the ancient laws of Caligula.") (citation omitted).

ambiguity . . . for an agency to resolve.'" *Carter*, 736 F.3d at 731 (Sutton, J., concurring) (quoting *INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001)).[4]

The basis for the rule of lenity demonstrates why *Chevron* deference cannot apply to statutes with criminal applications. If such a statute is sufficiently ambiguous as to leave two plausible readings distinguishable primarily by legislative policy choices, then it is incumbent on the *legislature* to have made such choices itself rather than delegate them to others. *See* Sunstein, 67 U. CHI. L. REV. at 332 ("One function of the lenity principle is to ensure against delegations."). If the legislature failed to do so in a manner discernable by a court, then either the narrower reading must prevail, or the statute is too uncertain to impose criminal consequences at all and is void for vagueness.

> Only the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them. Vague laws transgress both of those constitutional requirements. They hand off the legislature's responsibility for defining criminal behavior to unelected

---

[4] *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("court must exhaust all the 'traditional tools' of construction" before there can be genuine ambiguity for purposes of deference); *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion) ("Only after a court has determined a challenged statute's meaning can it decide whether the law sufficiently guides executive discretion to accord with Article I.").

prosecutors and judges, and they leave people with no sure
way to know what consequences will attach to their conduct.

*United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

Given the fundamental constitutional perils implicit in ambiguous
criminal laws and the delegation of the legislative power to define crimes,
the rule of lenity can be seen, in part, as a facet of the doctrine of
constitutional avoidance. To infer that Congress implicitly delegated the
power to define crimes would force a determination as to whether such a
vague statute or suspect delegation were constitutional. Lenity's age-old
canon of construction implicitly assumes that, despite employing
imperfect statutory language, Congress did *not* intend to delegate a
traditionally (in our Constitutional order) legislative function.

## III.  *Babbitt* does not support *Chevron* deference in this case and it is doubtful whether it is good law.

The panel majority applied *Chevron* deference rather than lenity,
relying on *Babbitt v. Sweet Home Chapter of Communities for a Great
Oregon*, 515 U.S. 687 (1995). But *Babbitt*, "with scarcely any
explanation," deferred "to an agency's interpretation of a law that carried
criminal penalties" and "brushed the rule of lenity aside in a footnote."
*Whitman v. United States*, 135 S. Ct. 352, 353 (2014) (Scalia J., joined by

Thomas, J., respecting denial of certiorari). As Justices Scalia and Thomas wrote, *Babbitt*'s "drive-by ruling . . . deserves little weight" because it "contradicts the many cases before and since holding that, if a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings." *Id*. at 353-54.

For example, a plurality in *Thompson/Center*, another National Firearms Act (NFA) case decided before *Babbitt*, refused to defer to the ATF's interpretation of the NFA and applied the rule of lenity to provisions with civil and criminal applications. 504 U.S. at 517-18. In *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994), the Court noted that lenity would have applied to any ambiguity in the NFA's mens rea requirement, and held that the NFA's criminal penalties for machinegun possession could not be imposed without proving that the defendant knew that he possessed a firearm covered by the Act.

Nine years after *Babbitt*, in an immigration case, the Court endorsed its *Thompson/Center* plurality, holding that the rule of lenity applied to 18 U.S.C. § 16 (defining "crime of violence") because the statute has both criminal and civil applications. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Even if § 16 lacked clarity on this point, we would be constrained

to interpret any ambiguity in the statute in petitioner's favor . . . whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."). *Leocal* did not even cite *Babbitt*'s footnote.

Ten years later, in cases under the Gun Control Act (GCA) and a federal trespassing statute, the Court applied lenity to reject deference for statutes with both criminal and civil applications. *Abramski v. United States*, 573 U.S. 169, 191 (2014) (ATF's interpretation of a GCA prohibition is "not relevant at all"; "criminal laws are for courts, not for the Government, to construe"); *United States v. Apel*, 571 U.S. 359, 369 (2014) ("[W]e have never held that the Government's reading of a criminal statute is entitled to any deference.").

Consistent precedent, before and after *Babbitt*, demonstrates that reading it to prioritize *Chevron* over the rule of lenity "is a lot to ask of a footnote, more it seems to me than these four sentences [of the footnote] can reasonably demand." *Carter*, 736 F.3d at 734 (Sutton, J., concurring).

## CONCLUSION

The district court's opinion should be vacated, and this Court should direct entry of a preliminary injunction.

Respectfully submitted,

/s/ *Joseph G.S. Greenlee*
JOSEPH G.S. GREENLEE
  *Counsel of Record*
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 378-5785
jgr@fpchq.org

GEORGE A. MOCSARY
UNIVERSITY OF WYOMING
COLLEGE OF LAW
1000 East University Avenue
Department 3035
Laramie, WY 82071
(307) 766-5262
gmocsary@uwyo.edu

ERIK S. JAFFE
SCHAERR | JAFFE LLP
1717 K Street, NW
Washington, DC 20006
(202) 787-1060
ejaffe@schaerr-jaffe.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the page limits set by this Court in its September 4, 2020 en banc Order. It is 10 pages or fewer in length, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the typestyle requirements of Fed. R. App. P. 32(a)(6), and this Court's September 4, 2020 en banc Order because this brief has been prepared in 14-point, proportionately spaced Century Schoolbook font.

I certify that the text of the electronic brief and the hard copies of the brief are identical.

I certify that the PDF was scanned with Windows Defender Antivirus version 1.295.1532.0, and according to the program, the document is virus free.

No privacy redactions were necessary.

Dated this 12th day of October 2020.

/s/ *Joseph G.S. Greenlee*
Joseph G.S. Greenlee
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2020, I served the foregoing brief via the CM/ECF system for the United States Court of Appeals for the Tenth Circuit, which will distribute the brief to all attorneys of record in this case.

Dated this 12th day of October 2020.

/s/ *Joseph G.S. Greenlee*
Joseph G.S. Greenlee
*Counsel for Amici Curiae*