No. 19-4036

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

W. Clark Aposhian,

*Plaintiff-Appellant*,

v.

William P. Barr, et al,

*Defendants-Appellees*.

On En Banc Review of Appeal from the United States District Court for the District of Utah,

# BRIEF OF AMICUS CURIAE JOHN CUTONILLI
# IN SUPPORT OF PLAINTIFF-APPELLANT

John Cutonilli
P. O. Box 372
Garrett Park, MD 20896

13 October 2020

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus John Cutonilli certifies that the amicus is not a publicly held corporation, that the amicus does not have a parent corporation, and that no publicly held corporation owns 10 percent or more of amicus's stock.

<pre>
                              /s/John Cutonilli
                              John Cutonilli
                              P. O. Box 372
                              Garrett Park, MD 20896
</pre>

Table of Contents

INTEREST OF AMICUS CURIAE..............................................................................1

INTRODUCTION ......................................................................................1

*Argument 1 - A bump stock does not cause a firearm to shoot more than one shot with a single function of the trigger.* .......................................3

*Argument 2 - Bump stocks do not operate "automatically."* ........................6

CONCLUSION................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019) ........................................................... 9

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978) ........... 6

**Statutes**

National Firearms Act of 1934, 26 U.S.C. 5845(b) ............................................. 2, 6

**Other Authorities**

83 Fed. Reg. 66,514 (Dec. 26, 2018) ............................................................... passim

## INTEREST OF AMICUS CURIAE

Cutonilli is a resident of Maryland and is subject to the same final rule in this case; Bump-Stock Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018). The main consideration that this amicus brief brings to light is the contradictory nature of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assertions in the record before it and the deviations the Court took from the record. He seeks to provide additional insights about the record in this case that have not been addressed by either party or the panel's decision in this case. His intent is to help this court avoid previous errors so that other fellow Americans are not subject to such unlawful rules. All parties have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part. Apart from amicus curiae, no person contributed money to fund this brief's preparation and submission.

## INTRODUCTION

This case hinges on definitions and specifically on how the ATF has disregarded definitions that are fundamental to the record and made unfounded, arbitrary, and capricious assertions that bump-stock type devices (bump stocks) are machine guns. The panel also deviated from the record and did not hold the ATF to

the logic of its own reasoning when evaluating their determination that bump stocks are machine guns. Higher standards are needed in both instances.

The National Firearms Act of 1934, 26 U.S.C. 5845(b), defines a "machine gun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," (83 Fed. Reg. 66514 here after referred to as FR page number).

The ATF proposed (FR 66519) and ultimately defined "automatically" to mean "functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger," (FR 66553). This definition of the term "automatically" is consistent with the dictionary definition.

The ATF proposed to interpret the phrase "single function of the trigger" to mean "a single pull of the trigger," (FR 66518) but ultimately defined it as "a single pull of the trigger and analogous motions," (FR 66553). The phrase "analogous motions" was added to take into account other methods of initiating the trigger that do not require a pull, (FR 66515).

The ATF concluded that "[t]he term 'machine gun' includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than

one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter," (FR 66553-66554).

*Argument 1 - A bump stock does not cause a firearm to shoot more than one shot with a single function of the trigger.*

One of the issues that must be resolved is the meaning of a single pull or single function. While the ATF correctly recognizes that during the operation of a firearm equipped with a bump stock the trigger resets, it incorrectly attributes more than one shot to a single pull. The bump stock operates as follows:

- The firearm shoots one shot from the first pull of the trigger.
- The bump stock steadies the trigger finger.
- The firearm and trigger recoil rearward, causing the rearward force on the trigger (pull) to end and the trigger to reset.
- The second shot is caused by a combination of two simultaneous actions by the shooter: (a) holding the trigger finger in place and (b) pushing the foregrip of the firearm forward, which causes the second rearward force (pull) on the trigger and the second shot.

3

- Subsequent shots are fired by repeating the two simultaneous actions. At no time does the firearm shoot more than one shot for each pull of the trigger.

As shown above, the ATF incorrectly argues that multiple shots are fired due to a single function or pull of the trigger without any additional physical manipulation of the trigger by the shooter. The ATF fails to examine whether additional pulls (or functions) of the trigger are in fact responsible for additional shots, which is the only way such additional shots could be produced (physical manipulation), (FR 66532, 66534).

The ATF correctly acknowledges that semiautomatic firearms (which shoot one time when the trigger is pulled in one direction) and binary triggers (which shoot "semiautomatically" when the trigger is pulled and again when the trigger is released) are not "machine guns" because "one function of the trigger results in the firing of only one round." This is correct because each direction in which the trigger is moved (pull vs. release) can be considered a separate single function of the trigger, (FR 66534).

In the record for this case, the ATF does not explain how the trigger of a firearm equipped with a bump stock remains active or pulled during the reset of the trigger. The ATF simply asserts that a bump stock is a machinegun because it

4

creates "an automatic firing sequence with a single pull of the trigger," (FR 66534). However, as noted above, the ATF itself acknowledges that separate functions of the trigger occur with directional changes of the trigger (whether a pull or a release), and that each function only releases one shot. Its assertion regarding an "automatic firing sequence with a single pull" is both inaccurate and contradictory with the record.

Given these facts, it is clear that the ATF's determination to classify a bump stock as a "machine gun" is arbitrary and capricious and inconsistent with its own definitions and the documentary record in this case. The bump stock does not change the internal mechanism of the semiautomatic firearm, *which physically prevents the firearm from shooting additional shots without resetting the trigger*.

In addition, the panel seeks to change the definition of a "single function of the trigger" by linking it inextricably with the "volition" or action of the shooter Opn. 30. The panel's proposed definitional change is also inconsistent with the record before the panel. The record shows that neither the proposed definition (FR 66518), nor the final definition (FR 66553) contain any references to volitional action. While there was a comment that proposed to use a volitional act as part of the definition of the function of the trigger (FR 66534), the ATF's response does not address this issue (FR 66534) nor has the ATF changed the final definition to include volition (FR 66553). Neither the panel nor the ATF should change the

record before the Court. *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978).

In its reply brief to the three-judge panel, the ATF goes on at length about the inadequacy of its own definitions associated with machine guns. If the ATF does not feel its own definitions adequately cover devices that should be considered machine guns under 26 U.S.C. 5845(b), then it should propose different definitions through its rule making process. The ATF should not endeavor to change the record in the midst of an active court case. That said, even if the ATF were to change the definition of a "single function of the trigger," a bump stock would still not be correctly termed a machine gun because it does not operate "automatically," as is explained below.

*Argument 2 - Bump stocks do not operate "automatically."*

The ATF again reveals the arbitrary nature of its assertions in its discussion of "bump firing." Bump firing is the generic term for describing the sequence of actions that occurs with a bump stock, which can also occur without the use of a bump stock device. The ATF determined that a bump-fired firearm that uses a belt loop or other similar means of steadying the trigger finger is *not* a "'self-acting or self-regulating mechanism'" because "when such items are used for bump firing, no device is present to capture and direct the recoil energy; rather, the shooter must do so," (FR 66533). The belt-loop method requires the shooter to supply a

6

"constant forward pressure with the non-trigger hand" to sustain the bump firing, (FR 66533).

Similarly, a bump stock requires the shooter to maintain "constant forward pressure with the non-trigger hand on the barrel-shroud or fore-grip of the rifle," (FR 66532). The bump stock device lacks any mechanism capable of pushing the firearm forward to create a repetitive cycle. Without the shooter exerting constant forward pressure on the fore grip, the bump stock mechanism would cause the firearm to recoil backward and simply stop. In both bump-firing (without a bump-stock device) and firing with a bump-stock device, the shooter must manually push the firearm forward to create a repetitive cycle.

The ATF also claims that bump stocks "enable semiautomatic firearms to operate 'automatically' because they serve as a self-acting or self-regulating mechanism," (FR 66533). They state that the bump stock "firing sequence is 'automatic' because the device harnesses the firearm's recoil energy as part of a continuous back-and-forth cycle that allows the shooter to attain continuous firing after a single pull of the trigger," (FR 66533). However, earlier in the record the ATF states that:

> The bump-stock-type device captures and harnesses the firearm's recoil to maintain a continuous firing sequence, and thus is properly described as "a self-acting or self-regulating mechanism. The very purpose of a bump-stock-type device is to *eliminate the need for the*

7

*shooter to manually capture, harness, or otherwise utilize this energy to fire additional rounds,* as one would have to do to "bump fire" without a bump-stock-type device. (FR 66532 emphasis added).

According to the ATF's own statement above, there is a clear distinction between something that happens "automatically" and something that does not. When the device "eliminate[s] the need for the shooter" to perform a repetitive cycle, the device is considered to operate "automatically." The ATF has indicated that when "the shooter must do so" the process does not happen "automatically." Once again, the ATF has made an arbitrary and capricious decision in reaching two different conclusions with regard to the same manual actions of the shooter. "Constant forward pressure" of the shooter is necessary *for both* bump firing and to operate a firearm equipped with a bump-stock device, yet the ATF reaches two completely different conclusions with respect to whether the pressure exerted by the shooter renders the mechanism self-acting or self-regulating, and, therefore, whether it is or is not correctly classified as a machine gun. The manual actions of the shooter make bump-fired firearm *not* a machine gun, yet a firearm equipped with a bump stock, which requires *the same type of manual participation of the shooter,* is a machine gun. The ATF cannot have it both ways.

Compounding these issues, the panel once again departs from the record and introduces several definitions that are not part of the record. While the panel is permitted to use non-record examples to illustrate a point, these extraneous

examples should not form the basis of the panel's opinion. The panel claims, for example, that the term "automatically" can include limited human involvement, Opn. 27, though this runs contrary to the definition used in the record wherein "automatically" is expressly defined to mean operating *without need for* human intervention of any kind. The panel and the DC Circuit in *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019), further confuse the issue by conflating the operating mechanism with how the mechanism is operated. For example, a machine gun operates automatically but requires manual aiming to operate it effectively. The dissent provides an example of an automatic sewing machine, which the sewing mechanism is automatic, but the operation of the sewing machine requires manual operation to guide the fabric, Diss. Opn 12. It should be noted that an automatic sewing machine should be contrasted with a manual sewing machine that requires the operator to manually pedal or crank the machine to cause the up-and-down motion of the sewing mechanism. The manual sewing maching has no *self-regulating or self-acting mechanism* to automate this process, just like a bump stock.

## CONCLUSION

When the Court confines itself to the record, the conclusion is simple. A bump stock device does not create a machine gun based on the definitions supplied

by the ATF. There is no need to evaluate this case using *Chevron*. It is clear from the record that the ATF has acted in an arbitrary and capricious manner with respect to the bump stock device determination. The ATF has used its definitions of "single pull of the trigger" and "automatically" in arbitrary ways in an effort to produce the outcome it desires: the banning of bump stock devices. The court should hold ATF to a higher standard and reject its proposed ban.

    The judgment of the appellate court should be overturned.

Respectfully submitted,

/s/ John Cutonilli  
John Cutonilli  
P.O. Box 372  
Garrett Park, MD 20896  
(410) 675-9444  
jcutonilli@gmail.com

13 October 2020

# CERTIFICATE OF COMPLIANCE

1. This amicus brief complies with the page limits set by this Court in its September 4, 2020 en banc Order. It is 10 pages or fewer in length, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

    Dated: 13 October 2020

                                                              /s/ John Cutonilli

                                                               John Cutonilli
                                                              P.O. Box 372
                                                              Garrett Park, MD 20896
                                                              (410) 675-9444
                                                              jcutonilli@gmail.com

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

/s/ John Cutonilli

John Cutonilli
P.O. Box 372
Garrett Park, MD 20896
(410) 675-9444
jcutonilli@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on 13 October 2020, which will automatically send notification to the counsel of record for the parties.

/s/ John Cutonilli

John Cutonilli
P.O. Box 372
Garrett Park, MD 20896
(410) 675-9444
jcutonilli@gmail.com